**Myron S. GRITCHEN, Plaintiff–Appellee,**

v.

**Gordon W. COLLIER, Defendant–Appellant.**

**No. 99–56940.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 2001

Filed June 13, 2001

---

Larry J. Roberts, Law Offices of James E. Trott, Fountain Valley, California, for the defendant-appellant.

Daniel P. Tokaji, ACLU Foundation of Southern California, Los Angeles, California, and Alan L. Schlosser, ACLU Foundation of Northern California, San Francisco, California, for the plaintiff-appellee.

Anthony M. Santana, Sacramento, California, for amicus curiae California Association of Highway Patrolmen, and Enrique Hernandez, Los Angeles, California, for

amicus Los Angeles Police Protective League.

Daniel S. Murphy, Principal Deputy, Long Beach, California, for amicus curiae City of Long Beach.

Stephen M. Fiegel, Sacramento, California, for amicus curiae Kenneth Stanley.

Mary Frances Prevost, San Diego, California, for amici curiae California Anti–Slapp Project, et al.

Paul L. Hoffman, Schonbrun Desimone Seplow Harris & Hoffman LLP, Venice, California, and Douglas E. Mirell, and Joseph Geisman, Los Angeles, California, for amici curiae Individual Civil Rights Attorneys.

Marci Fukuroda, California Women's Law Center, Los Angeles, California, for amicus curiae California Women's Law Center.

Before: RYMER, HAWKINS and GOULD, Circuit Judges.

RYMER, Circuit Judge:

Myron S. Gritchen filed a complaint with the Long Beach Police Department about the conduct of Gordon W. Collier, a Long Beach police officer who stopped Gritchen for speeding. Collier took umbrage and threatened to sue Gritchen for defamation. Most complaints about public officials are privileged in California, but state law allows peace officers to bring an action for defamation against someone who has filed a complaint that is false, was made with knowledge that it was false, and was made with spite, hatred or ill will. Gritchen filed suit in federal court, seeking declaratory and injunctive relief that California Civil Code § 47.5, which permits such an action, is unconstitutional under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. The district court held that it is, and restrained Collier from proceeding with any lawsuit under § 47.5.[1] Collier's appeal questions whether Gritchen has stated a claim for deprivation of a constitutional right and whether Collier's threatened suit for defamation, being private, is under color of law or amounts to state action for purposes of relief under 42 U.S.C. § 1983.[2] We conclude that it fails both tests, and therefore reverse.

I

After Collier, a police officer with the City of Long Beach Police Department, stopped Gritchen and gave him a traffic ticket for speeding on April 16, 1998, Gritchen filed a citizen complaint with the Department alleging that Collier had been discourteous and argumentative, and that his breath smelled of alcohol. The police department found no misconduct, and so advised Gritchen on June 5. Collier then sent Gritchen two letters. The first, sent by his attorney July 31, 1998, indicated that Collier intended to bring suit for defa-

---

1. The district court's opinion is published. *Gritchen v. Collier*, 73 F.Supp.2d 1148 (C.D.Cal.1999).

2. Amicus briefs in support of Collier's appeal have been filed by Kenneth Stanley, the California Association of Highway Patrolmen, the Los Angeles Police Protective League as well as the City of Long Beach. Amici in support of Gritchen are: California Attorneys for Criminal Justice, Criminal Defense Bar Association, Ella Baker Center for Human Rights, First Amendment Project, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, National Association of Criminal Defense Lawyers, and Protection and Advocacy, Inc., California Women's Law Center, and Individual Civil Rights Attorneys.

mation; the second, dated October 8, 1998, offered to settle for $4,500, otherwise Collier would seek damages exceeding $5,000 for slander and defamation in small claims court.

Meanwhile, on October 7 Gritchen filed a verified complaint in the United States District Court for the Central District of California invoking the Civil Rights Act of 1871, 42 U.S.C. § 1983. The complaint alleges that Collier threatened to sue under § 47.5 because of Gritchen's citizen complaint, and that § 47.5 creates an impermissible legislative classification which is facially unconstitutional under the First and Fourteenth Amendments. It seeks a declaration that § 47.5 is facially unconstitutional and that Collier's threatened lawsuit under 47.5 would violate Gritchen's First and Fourteenth Amendment rights; and it seeks an injunction restraining Collier from proceeding with his threatened lawsuit.

As required by 28 U.S.C. § 2403(b), the district court certified to the Attorney General of California that the constitutionality of § 47.5 had been called into question. The Attorney General elected to take no part in the proceedings.

Collier stipulated not to pursue his state action until this case was resolved. Gritchen then moved for summary judgment, which the district court granted. The court found no problem with standing, as Collier's threat of a defamation suit was more than imaginary or speculative. It held that Collier acted under color of law because all the relevant events arose out of the performance of his job as a police officer, and this case involves a provision of state law that was created for, and applies only to, police officers such that the events are all unavoidably tied to his position as a police officer. On the merits, the court ruled that § 47.5 is facially unconstitutional because it treats citizen complaints against police officers differently from complaints against all other government officials and thereby makes an impermissible content-based discrimination against a type of speech. Accordingly, it entered judgment granting the relief requested.

Collier timely appealed.

## II

California Civil Code § 45 proscribes libel, which is a "false and unprivileged publication by writing, ... which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." California is one of the few states which provides a statutory privilege for citizen complaints filed through official proceedings about the conduct of state employees.[3] It does so in Civil Code § 47 by defining a "privileged publication or broadcast" as one made, among other circumstances,

(a) In the proper discharge of an official duty.

(b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 ...

However, police officers are excepted by an amendment to the Code that was adopted in 1982. It is codified as Civil Code § 47.5, and provides:

Notwithstanding Section 47, a peace officer may bring an action for defamation against an individual who has filed a complaint with that officer's employing agency alleging misconduct, criminal conduct, or incompetence, if that complaint is false, the complaint was made

---

**3.** *See Gritchen,* Appendix, 73 F.Supp.2d at 1154.

with knowledge that it was false and that it was made with spite, hatred, or ill will. Knowledge that the complaint was false may be proved by a showing that the complainant had no reasonable grounds to believe the statement was true and that the complainant exhibited a reckless disregard for ascertaining the truth.

### III

■ Collier focuses on the fact that Gritchen's action is premised upon the civil rights statute, 42 U.S.C. § 1983, yet it seeks to prevent him from filing a private lawsuit in state court. Collier recognizes that a plaintiff may challenge the constitutionality of a state statute in federal court if he can assert a genuine threat of enforcement, and if the statute will impair his constitutional rights. *See, e.g., Steffel v. Thompson,* 415 U.S. 452, 475, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). He also acknowledges that in some circumstances a plaintiff need only allege that the mere existence of a statute has a "chilling effect on free expression." *Dombrowski v. Pfister,* 380 U.S. 479, 487, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). But he contends that Gritchen can do neither in this case. In Collier's view, § 47.5 is not truly being enforced against Gritchen, nor does the statute in itself restrict Gritchen's expression or chill his exercise of free speech. He points out that, as we have held, the filing of a libel action does not chill First Amendment rights, *Jungherr v. San Francisco U.S.D. Bd. of Educ.,* 923 F.2d 743, 745 (9th Cir.1991), and that there is no constitutional right to be free from defending speech in court. Further, Collier contends that his threat to bring suit was entirely a personal pursuit, unrelated to his official position as a police officer, that is not converted into state action simply because suit is authorized by a state statute. Finally, Collier believes there is no

constitutional infirmity because the state has simply found one category of defamation to be more baneful than others and has consequently afforded it differential treatment. This, he submits, fully comports with the Supreme Court's latest word on the subject in *R.A.V. v. City of St. Paul,* 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).

Gritchen counters that § 47.5 denies people who complain about police misconduct the protection afforded to those who complain about other public officials. His evidence shows that many police officers file § 47.5 lawsuits, and his expert opines that this will continue so long as they receive a neutral response from supervisors and others. Gritchen sees no problem with justiciability, as it is undisputed that Collier threatened to sue him under § 47.5 and that is sufficient. Likewise, Gritchen's position is that the "under color of law" requirement is met, because Collier threatened to enforce a specific state law that benefits a class of state officials—police officers—against him, based on his statements about Collier's performance of his duties as a police officer. Finally on the merits, Gritchen contends that there is no justification for the content distinction drawn by § 47.5 against a particular type of proscribed speech, a distinction which in his view is barred by the holding in *R.A.V.*

■ We do not reach the merits because Gritchen fails to convince us of any appropriate basis for a federal court to declare this state statute unconstitutional. If this is not properly a § 1983 action, there is no other basis upon which the suit can proceed. The Declaratory Judgement Act, 28 U.S.C. §§ 2201 and 2202, applies only if federal jurisdiction independently exists. The complaint proceeds under 28 U.S.C. § 1343, the jurisdictional provision for the Civil Rights Act, and § 1331.

Gritchen suggests that federal question jurisdiction exists under § 1331 apart from § 1343, but does not explain how. Simply raising a constitutional argument in defense of an action that is brought in state court does not open the federal forum. *See, e.g., Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (removal is not available where only a defense raises constitutional or federal issues).

Although a plaintiff here, Gritchen is a true defendant because this suit for declaratory relief is preemptive. Gritchen and Collier are non-diverse, so Collier's threatened lawsuit, if filed, would have to be brought in state court. Once there, in the normal event Gritchen would be expected to raise the constitutionality of § 47.5 by way of a motion to dismiss or as a matter of defense. Here, of course, Gritchen beat Collier to the punch.[4]

Against this backdrop, we turn to whether Collier's threatened suit is under color of state law.

**A**

To state a claim under § 1983, the plaintiff must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law.[5] *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Acting under color of state law is "a jurisdictional requisite for a § 1983 action." *West v. Atkins,* 487 U.S. 42, 46, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Unquestionably Collier was acting under color of state law when he stopped and ticketed Gritchen. However, *that* activity is not at issue in this case. Just because Collier is a police officer does not mean that everything he does is state action. *See Van Ort v. Estate of Stanewich,* 92 F.3d 831, 838 (9th Cir.1996) ("The district court was not required to find that [the officer] acted under color of state law merely because he was a law enforcement officer;" actions assaulting and attempting to rob victims were the deputy's private actions and were not under color of law).[6] As we explained in *Van Ort,* "[i]f a govern-

---

**4.** No one questions the seriousness of Collier's threat to sue. *See Blum v. Yaretsky,* 457 U.S. 991, 1000, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (noting that issue for purposes of standing is "whether any perceived threat to [plaintiff] is sufficiently real and immediate to show an existing controversy," and is not "imaginary or speculative") (citation omitted). While we assume that Gritchen has standing in this sense, the real question is whether the threat of suit is state action, thus creating a justiciable controversy over which we have jurisdiction between Gritchen and Collier *as a state actor,* not whether it is real and immediate enough to create a controversy between Gritchen and Collier *personally.*

**5.** In this case, the distinctions between "state action" under the Fourteenth Amendment and "under color of state law" for § 1983 are not material. We use the terms interchangeably for convenience.

**6.** *See e.g., Martinez v. Colon,* 54 F.3d 980, 985 (1st Cir.1995) (noting difference between police officer's tortious conduct that takes place within context of arrest, interrogation, or similar maneuver and private violence); *Pitchell v. Callan,* 13 F.3d 545, 548 (2d Cir.1994) (officer's shooting of acquaintance was not acting in accordance with police regulation or invoking authority of police department); *Gibson v. City of Chicago,* 910 F.2d 1510, 1516 (7th Cir.1990) ("[A]cts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties.") (citation omitted); *Bonsignore v. City of New York,* 683 F.2d 635, 638–39 (2d Cir.1982) (officer was within ambit of personal pursuits when he shot his wife); *Delcambre v. Delcambre,* 635 F.2d 407, 408 (5th Cir.1981) (police chief's assault on private citizen not under color of law even though it happened at police headquarters); *Stengel v. Belcher,* 522 F.2d 438, 441 (6th

ment officer does not act within his scope of employment or under color of state law, then that government officer acts as a private citizen." 92 F.3d at 835.

Whether a government employee is acting under color of law is not always an easy call, especially when the conduct is novel. "It is ... a truism by now that there is no rigid formula for measuring state action for purposes of section 1983 liability. Rather, it is a process of 'sifting facts and weighing circumstances' which must lead us to a correct determination." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir.2000) (quoting *Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974) (citation omitted)). We understand the district court's view that the traffic stop, followed by the citizen complaint, and ending with the threats of suit are "unavoidably tied" to Collier's position as a police officer, but we disagree that this answers the question of whether Collier's threatened suit is part of his public employer's work, or a private pursuit.

■ No one suggests that threatening suit or bringing it is one of Collier's duties as a police officer. So far as the record discloses, the Long Beach Police Department had nothing to do with his doing so. Its approval was not required, nor would its disapproval matter. Collier's decision to threaten suit is not subject to the control of the Department. Pursuing private litigation does not abuse Collier's position or authority as a police officer, and Gritchen does not argue otherwise. Beyond this, a defamation suit is quintessentially personal; it is to redress reputational injury. Collier's settlement demand of $4,500 was for himself. Presumably a complaint, if filed, would seek recovery of damages that

he would keep, if successful. Put differently, a decision in his favor would benefit Collier, not the state. In these circumstances, Collier's action in this case is indistinguishable from the private squabbles that we, and other circuits, have consistently refused to attribute to the state.[7]

Gritchen's arguments to the contrary boil down to the fact that Collier's threatened suit relies on § 47.5. In Gritchen's view, Collier acted under color of state law because he *is* a police officer and is purporting to use a state law that expressly benefits police officers to undo harm allegedly done to him as a police officer. However, the mere fact that an enabling statute exists is insufficient to make action under it state action. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Melara v. Kennedy*, 541 F.2d 802, 806 (9th Cir.1976).[8] Here, as in *Melara*, "the statute creates only the right to act; it does not require that such action be taken. [Collier's] 'exercise of the choice allowed by state law where the initiative comes from (him) and not from the State, does not make (his) actions in doing so "state action" for the purposes of the Fourteenth Amendment.'" 541 F.2d at 806 (quoting *Jackson*, 419 U.S. at 357, 95 S.Ct. 449).

This makes Collier's use of § 47.5 quite different from *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), and *Sable Communications v. Pacific Tel. and Tel. Co.*, 890 F.2d 184 (9th Cir.1989), upon which Gritchen relies. In both cases, a private actor acted jointly with state officials to enforce a state statute—a penal code provision, in *Sable*, and attachment procedures, in *Lugar*. Unlike them, Collier is acting entire-

---

Cir.1975) ("Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983") (citation omitted).

7. *See Van Ort*, and cases cited in n. 6.

8. *See also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (reversing Second Circuit decision that had created split with *Melara*).

ly by himself, without assistance from state officials.

Gritchen also insists that Collier is "enforcing" § 47.5 by threatening suit under it, and thus is exercising power conferred pursuant to the authority of state law. But what Collier is doing by threatening to sue (or suing) for defamation is no different from what any defamation plaintiff does when he or she threatens to sue, or sues under § 45. In each instance the plaintiff is simply enabled by state law and decides to pursue the remedy afforded. No more than in *Jackson* or *Melara* does this convert the plaintiff's purely private action into state action.

We conclude that Collier's actions were not taken under color of state law. *See Laxalt v. McClatchy,* 622 F.Supp. 737 (D.Nev.1985) (request for retraction and threatened suit by United States Senator was not under color of federal law despite his position for purposes of a *Bivens* action), cited with approval in *Johnson v. Knowles,* 113 F.3d 1114, 1117–18 (9th Cir. 1997).

### B

As Collier was not acting under color of law in threatening to sue for defamation, he cannot have deprived Gritchen of a constitutional right. *Van Ort,* 92 F.3d at 835 (citing *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).

Accordingly, this action must be dismissed for failure to state a claim, and thus, for lack of jurisdiction.

REVERSED.